UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| JESSE THOMAS JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No: 2:06-CV-173 |
| v. | ) ) | Chief Judge Curtis L. Collier |
| DOLLAR GENERAL CORPORATION, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM

Plaintiff Jesse Thomas Johnson alleges Defendant Dollar General Corporation violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-401. He also alleges he was subjected to physical assault, intentional infliction of emotional distress, and false imprisonment. Before the Court is Defendant's motion for summary judgment (Court File No. 49) and a related motion to quash or dismiss (Court File No. 60). Having reviewed the parties' briefs, the evidence, and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 49) and **GRANT** the motion to quash or dismiss (Court File No. 60).

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Plaintiff's Employment at Dollar General

Plaintiff begin working at a Dollar General store as a part-time clerk in October 2003 (Court File No. 50). Other employees of the store included Plaintiff's aunt, Arbutus "Daisy" Smith, store manager Tim Trent, assistant manager Skip Davis, and Robert Watford (Court File No. 50).

The allegations recounted here are stated in a light most favorable to the Plaintiff. Shortly

after Plaintiff began working, Watford and Davis allegedly began making inappropriate comments to Plaintiff. About a week and a half after Plaintiff began working, Watford allegedly commented "if you've got big feet, you've got to have a bigger penis" (Plaintiff dep. p. 48; Court File No. 57). Davis also told Plaintiff's aunt that he would like to see Plaintiff's penis (Smith Dep. 61-62). In addition, Watford allegedly rubbed Plaintiff's stomach, and at a later time, Davis did the same (Court File no. 50). Subsequently, Plaintiff alleges Davis walked up from behind, pulled Plaintiff's pants down, laughed, and walked away (Court File No. 50). Plaintiff contends that on several occasions, Davis and Watford rubbed his stomach and made other inappropriate comments to him. The comments were about him having "a nice butt" and/or "being every gay person's dream" (Court File No. 57).[1]

The last incident occurred on or about December 21, 2003. Plaintiff alleges he was called into an office with Watford and Davis. They closed the door and Davis grabbed Plaintiff from behind, holding his arms while Watford attempted to pull down Plaintiff's pants. Plaintiff tried to fight back, but he and Davis fell to the floor on their sides. Watford then pulled down Plaintiff's pants, but was unable to pull down his boxers. After Watford pulled his pants down, the two men left the office (Court File No. 57). During the incident, Plaintiff did not scream or yell, but Davis and Watford were laughing (Court File No. 57). Plaintiff's aunt was also in the store during this incident.[2] She took Plaintiff home, and he never returned to work. Plaintiff believes he quit;

---

[1]Plaintiff others observations and interactions with Davis, Watford, and Trent gave him reason to believe all three men were homosexual (Pl. Dep. 50, 56, 58).

[2]According to Plaintitt's aunt, she witnessed the entire episode, and she also heard the conversation about body piercing of the penis that transpired immediately before the incident. Plaintiff said the only way that would ever happen to him is if someone caught him and held him down (Smith Dep. p. 32-33). According to Plaintiff's aunt, at that point Watford begin chasing

2

however, Defendant contends he was fired for not coming to work (Court File No. 57). Plaintiff only returned to the Dollar General store to pick up his final paycheck.

Plaintiff contends he informed Trent, the store manager, about the comments and stomach rubbing incidents on four or five occasions (Court File No. 57). To Plaintiff's understanding, Trent spoke with both men, gave Watford a disciplinary notice, and threatened them with termination. Defendant, however, alleges Trent did not receive any complaints from Plaintiff about harassment or discrimination (Court File No. 50).

### B. Anti-Harassment and Discrimination Policy

Defendant has an Anti-Discrimination and Harassment Policy that is disseminated to employees upon hiring. The policy includes a mechanism for reporting harassment, discrimination, and retaliation (Court File No. 50). The policy states:

> All Dollar General employees have the right to work in a environment free from all forms of discrimination and conduct which can be considered harassing, coercing, or disruptive. Dollar General values and respects the rights and dignities of each person and will not tolerate discrimination or harassment based on . . . any other characteristic protected by law. Examples of conduct prohibited by this policy include, but are not limited to: unwelcome intentional touching of another person or an unwanted intentional physical contact, including patting, pinching, or brushing against another person's body. Asking unwelcome questions or making unwelcome comments about other person's sexual activities, dating, personal or intimate relationships or appearance.
>
> Conduct or remarks that are sexually suggestive or that demeanor show dislike for a person or a class of person because of gender (including jokes, pranks, teasing, obscenities, obscene or rude gestures . . . blocking physical movement.)

(Court File No. 57).

The Employee Response Center ("ERC") and the Alternative Dispute Resolution Center

---

Plaintiff around the store, and eventually caught him and returned to the office, where the attack took place (Smith Dep. p. 34).

("ADR") are both places an employee can call to address employment issues (Court File No. 50). The toll-free numbers to both centers are provided for employees in a number of ways, including the employee handbook, policies, store posters, periodic paycheck stubs, a pamphlet, and store calendars (Court File No. 50). Plaintiff received the Employee Handbook at the time of his employment as did Trent, Davis, and Watford. (Court File No. 50). Plaintiff never called the ERC or the ADR. He contends he did not have the telephone number (Court File No. 57).

Trent called the ERC in January 2004 after he learned of one of the incidents (Court File No. 50). Plaintiff contends his aunt told Trent of the incident the day after it occurred; Defendant contends Plaintiff's aunt did not tell Trent until a week later, and Trent said he learned of the incident from a neighboring business owner (Court File No. 50). Nevertheless, after the manager reported the incident, an investigation was conducted. Defendant terminated Watford's and Trent's employment. Davis had previously resigned (Court File No. 50). Subsequently, Plaintiff was offered his job back but he declined the offer (Court File No. 50).

Dollar General also has a zero tolerance policy. Under that policy, if a store manager becomes aware of something which would violate the policy, he must address the problem and then report it to his district manager or to his immediate supervisor (Court File No. 57). Assistant managers are required to report any instances of inappropriate action to an immediate supervisor (Perry Dep. 41-42). Dollar General also provides training on its zero tolerance policy which is "conducted through district workshops periodically throughout the company" (Court File No. 57).

### C. Procedural History

Plaintiff filed his original complaint in this case against Dollar General Corporation (Court File No. 1), and he served Dollar General Corporation in Goodlettsville, Tennessee (Court File No.

4

2). Defendant filed a motion to dismiss, identifying itself as "Dolgencorp, Inc., incorrectly identified as Dollar General Corporation." (Court File No. 3). The same wording appears in multiple writings from Defendant (e.g., Court File Nos. 5, 5-2, 20, 31, 38).

After the motion to dismiss was resolved, Dollar General Corporation filed an answer to the complaint (Court File No. 31). In the answer, Defendant again identified itself as Dolgencorp. The answer also stated, "Defendant if properly named as Dolgencorp, Inc. as opposed to the incorrect Defendant named in this action . . . admits it may be served through its registered agent. . . ." (*id.*, p. 2). The answer concludes by stating "Defendant Dolgencorp., [sic] Inc. respectfully requests . . . judgment be entered in favor of Defendant. . . ." (*id.*, p. 10).

Based on Defendant's statements, the Court had assumed the defendant is Dolgencorp, Inc. (*see* Court File No. 12, p. 1 n.1 & 27 p.1 n.2). The references to the issue in the Court's opinions indicate the Court assumed this was a problem of incorrect identification. It appeared Plaintiff had merely used the incorrect name for Defendant, akin to suing someone named David but calling him Dave. Plaintiff reached the same conclusion. He filed an amended complaint listing the defendant in the case caption as "Dolgencorp, Inc., d/b/a; a/k/a Dollar General Corporation" (Court File No. 42). In a footnote, Plaintiff states, "Defendant alleges that the true name is Dolgencorp, Inc." but complains he has no proof he was employed by any entity other than Dollar General Corporation (*id.*, p. 1 n.1). "Further, all Defendant [sic] documents denominate the employer as Dollar General." (*Id.*). In amending his complaint, Plaintiff never sought to add an additional defendant; he merely changed the name of the existing defendant, as suggested by Defendant.

In its answer to the amended complaint, Defendant explains the misidentification is not merely an improper identification but an incorrectly named defendant. Defendant responded as

5

Dollar General Corporation and explained in a footnote that Dolgencorp is a separate party (Court File No. 48). In other words, Defendant explained this was not merely an identification problem but a question of who was the proper defendant, akin to a plaintiff suing Dave instead of his younger brother Ryan. Defendant states there is no legal entity known as "Dolgencorp, Inc., d/b/a; a/k/a Dollar General Corporation." The answer also asserts, "Dollar General Corporation was not Plaintiff's employer, and Plaintiff has failed to name and issue summons to the proper defendant." (Court File No. 48, p. 9). Earlier, in a response to interrogatories dated March 3, 2008, Defendant had also identified itself as Dolgencorp, and explained that "Plaintiff was employed by Dolgencorp, Inc., a wholly owned subsidiary of Dollar General Corporation." (Court File No. 51-5). That was the first time the Court is aware of where it became clear Dollar General Corporation was not merely a misnomer but an entirely separate party from Dolgencorp.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative

evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

#### A. Who is the Employer

In its motion for summary judgment, Defendant argues Dollar General Corporation is not the proper defendant and should therefore be dismissed. Plaintiff contends that although he received a paycheck from Dolgencorp, he believed his employer was Dollar General Corporation. Plaintiff argues that under the single employer doctrine, Dolgencorp and Dollar General Corporation should be treated as a single entity. Plaintiff's response to summary judgment also requested the case caption to "be amended to include Dollar General Corporation, as well as Dolgencorp, Inc." In addition, Plaintiff served Dolgencorp with a summons and copy of the complaint (Court File No. 55). This prompted Dolgencorp and Dollar General Corporation to move to quash the subpoena or for the Court to dismiss the complaint against Dolgencorp or grant summary judgment.

To address this issue, the Court must answer two questions: (1) What party or parties are named in this case? (2) Assuming Dolgencorp was Plaintiff's employer, can Dollar General Corporation also be held liable under the single employer doctrine? As explained below, the Court

concludes Dollar General Corporation is the only named defendant in this case and it can be held liable under the single employer doctrine.

### 1. Dollar General Corporation is the Sole Defendant

The original complaint named Dollar General Corporation as the defendant, and Defendant's answer identified it as Dolgencorp. The amended complaint names Dolgencorp[3] as the defendant, and Defendant's answer identifies it as Dollar General Corporation. Embedded in Plaintiff's response to summary judgment, he improperly requests to amend the case caption to include both defendants.

Dollar General Corporation was the original defendant in this case, and Plaintiff never added another defendant; he merely started referring to Dollar General Corporation by a different name. Although the caption of Plaintiff's amended complaint identifies the defendant as Dolgencorp, it is apparent that any cause of action he brings is against Dollar General Corporation. In the footnote on the first page, Plaintiff asserts he believes the defendant's true identity is Dollar General Corporation. Throughout the amended complaint, he refers to Defendant using singular references, never referring to multiple defendants. He frequently abbreviates Defendant's name as "DGC," which could potentially be an abbreviation for Dolgencorp but is more likely an abbreviation for Dollar General Corporation. He identifies Defendant as a "Tennessee corporation, incorporated in the State of Tennessee, doing business within the State of Tennessee, with its principal place of

---

[3]As previously noted, the complaint actually names the defendant as "Dolgencorp, Inc., d/b/a; a/k/a Dollar General Corporation." The d/b/a designation, meaning "doing business as," in the caption is not legally significant. *Woodall v. Underwriters at Lloyds, London*, No. 4:06-CV-71, 2007 WL 1231688, *2 (E.D. Tenn. Apr. 26, 2007); *Trs. of the Mason Tenders v. Faulkner*, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007); *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977). The designation "a/k/a" is similarly not legal significant. *Southern Ins. Co. v. Consumer Ins. Agency, Inc.*, 442 F. Supp. 30, 31 (E.D. La. 1977).

business" in Goodlettsville, TN. Dollar General Corporation matches that description, whereas Dolgencorp is a Kentucy corporation (Court File No. 52). Therefore, the Court concludes Plaintiff's amended complaint names Dollar General Corporation, not Dolgencorp, as a defendant.

As a result, the motion to quash or in the alternative to dismiss or for summary judgment is well-taken. Plaintiff's amended complaint never asserts Dolgencorp was his employer. In fact, the footnote on the first page contends Dolgencorp was not his employer. Therefore, to the extent Plaintiff now seeks to bring this claim against Dolgencorp, he would need to amend his complaint to assert how Dolgencorp has harmed him. Although Defendant's identification of itself was at times confusing, Plaintiff was obligated to sort through the confusion and determine against whom he is bringing his claim. At this late date, he has served Dolgencorp and named it as a defendant, but his complaint does not assert Dolgencorp harmed him. Therefore, Dolgencorp is not a party to this case.

## 2. Dollar General Corporation Can Be Liable

Although the caption of the amended complaint identifies the defendant as "Dolgencorp, Inc., d/b/a/; a/k/a Dollar General Corporation," the summons, original complaint, and text of the amended complaint make clear the defendant is Dollar General Corporation. Defendant argues Plaintiff was employed by Dolgencorp, so summary judgment should be granted for Dollar General Corporation. Plaintiff argues that under the single employer doctrine, Dollar General Corporation can be liable as Plaintiff's employer.

"It is well established that a parent corporation and a subsidiary are in law separate and distinct entities." *Tennessee Valley Authority v. Exxon Nuclear Co.*, 753 F.2d 493, 497 (6th Cir. 1985). However, there are times when the parent and subsidiary can be considered a single

9

employer. Under the single employer doctrine, two companies are "so interrelated that they constitute a single employer subject to liability." *Swallows v. Barnes & Noble Book Stores, Inc.* 128 F.3d 990, 993 (6th Cir. 1997) (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1983)). The inquiry as to whether a parent and subsidiary constitute a single employer requires there be

> sufficient indicia of an interrelationship between an immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer. When such a degree of interrelatedness is present, we consider the departure from the 'normal' separate existence between entities an adequate reason to view the subsidiary's conduct as that of both.

*Armbruster*, 711 F.2d at 1337.

Courts consider four factors when deciding to treat two entities as a single employer. The factors are: (1) interrelation of operations; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 994. While no single factor is conclusive, "control over labor relations is a central concern." *Id.* at 994 (citing *Armbruster*, 711 F.2d at 1337).

Plaintiff was employed by Dolgencorp (Court File No. 53, ¶ 7). His paychecks were from Dolgencorp (Court File No. 53, exh. K). Plaintiff contends he believed his employer was Dollar General Corporation because that is the entity named on his employment application; with which he signed an employment agreement and an anti-harassment policy; and which offered him back his job. In addition, Plaintiff notes that both entities have the same business address and registered agent for service of process. Some of those assertions are not entirely accurate. The Court is not aware of the contents of Plaintiff's employment application, but does have before it the employment agreement and anti-harassment policy, both of which refer only to "Dollar General." A related documents contains an address in Goodlettsville, Tenn. that belongs to both entities (Court File No.

53 exh. J). In response to the motion to quash, Plaintiff asserts Defendant interchangeably refers to itself as Dollar General Corporation or Dollar General. Taking the evidence in the light most favorable to the non-moving party, it is possible the documents referring to Dollar General indicate Dollar General Corporation as opposed to Dolgencorp. Furthermore, it is clear that the offer to rehire Plaintiff came from Dollar General Corporation (Court File No. 10, exh. 1).

In determining whether there exists interrelatedness of operations, there is no probative evidence before the Court. Although the two companies have the same address as their principal place of business and use the same registered agent and legal counsel, there is no evidence about whether their operations are interrelated. *Cf. Swallows*, 128 F.3d at 994 (finding no interrelation of operations because two entities kept their own records and maintained separate bank accounts and offices).

As to common management, common directors and boards, the parties have pointed to no evidence on this matter.

With respect to common ownership, there is common ownership between the two companies because Dolgencorp is a wholly-owned subsidiary of Dollar General Corporation. *See Armbruster*, 711 F.2d at 1338 (common ownership established where the subsidiary was wholly-owned by the parent corporation). Defendant argues that common ownership is not established because neither entity is a sham. *See Swallows*, 128 F.3d at 995 (citing *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 568 (6th Cir. 1984). However, the "sham" criteria must be understood in the context of those cases, which involved separately-owned entities. Here, the two entities do have common ownership, so it is not relevant that neither entity is a sham.

Significantly, there appears to be centralized control of labor relations. After Plaintiff filed

suit naming Dollar General Corporation as the defendant, he received correspondence stating that defendant was not the proper defendant and that Plaintiff was an employee of Dolgencorp (Court File No. 5). Despite this contention, conversations between Plaintiff and Dollar General Corporation continued. Communications regarding litigation were between Defendant's in-house counsel and Plaintiff's attorney. The written communication was on letterhead from Defendant's office. In addition, Plaintiff was offered reemployment. That letter was also on Dollar General Corporation letterhead, and the offer was made "on behalf of Dollar General." (Court File No. 10, exh. 1). In addition, that letter requested that Plaintiff contact the ERC to reply to the offer of reemployment. Because there is nothing to demonstrate otherwise, the evidence suggests the two entities streamlined their labor relations and personnel to the extent that the ERC was a resource for employees of both companies and litigation issues were addressed through the general counsel for Defendant. Given the importance of control over labor relations, the single employer doctrine applies and the two companies are so interrelated that they will be treated as one for the purposes of liability.

**B.    Workers' Compensation Exclusivity Doctrine**

Defendant contends Plaintiff's Tennessee common law claims fail due to the worker's compensation exclusivity doctrine. The Court agrees.

The Tennessee Workers' Compensation Law provides relief to employees who suffer "personal injury or death by accident arising out of and in the course of employment without regard to fault as to the cause of the injury or death." Tenn. Code Ann. § 50-6-103(a) (2007). Injuries compensable under the Workers' Compensation Law must arise out of a person's employment and occur during the course of such employment. *Anderson v. Save-A-Lot*, 989 S.W.2d 277, 279 (Tenn.

1999) (citing *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997)). The injury arises out of a person's employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work [was] required to be performed and the resulting injury." *Id.* at 280 (quoting *T.J. Moss Tie Co. v. Rollins*, 235 S.W.2d 585 (1951)). The injury takes place in the course of employment if it "occurs while he is performing a duty he was employed to do." *Id.* at 280 (quoting *Travelers Ins. Co. V. Googe*, 397 S.W.2d 368, 371 (1965)).

Pursuant to Tenn. Code Ann. § 50-6-108(a), the Workers' Compensation Law provides the exclusive remedy for an employee who is injured during the course and scope of employment. However, there is an exception to this rule. The exclusivity doctrine does not apply in instances where the employer acts with "actual intent to injure." *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42, 48 (Tenn. Ct. App. 1993). In such cases, the injured employee may bring a common law tort cause of action for damages. *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 270 (Tenn. Ct. App. 1988). However, a co-employee's intentional tort will not give rise to a cause of action against the employer. *Williams v. Smith*, 435 S.W.2d 808, 811 (Tenn. 1968). The basis for the exception is that where an employer has deliberately produced a result, the employer cannot allege the accidental character of the injury. *See Cooper v. Queen*, 586 S.W.2d 830, 833 (Tenn. Ct. App. 1979). The Tennessee Court of Appeals has explained:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury* . . . . Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and

> unlawfully violating a safety statute, this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character.

*King v. Ross Coal Co.*, 684 S.W.2d 617, 619 (Tenn. Ct. App. 1984) (emphasis in original) (quoting 2A Lawson, Workmen's Compensation Law § 68.13 at 13-5 (1982)).

Therefore, the traditional definition of "intent" (*i.e.*, desire to cause consequences of actions or belief consequences are substantially certain to result) is not applicable in this context and the "actual intent" required for a claim to fall outside the exclusivity provision is a specific and deliberate desire to cause harm which deprives the injury of all accidental character. *See Coffey v. Foamex LP*, 2 F.3d 157, 160-61 (6th Cir. 1993); *Valencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 243 (Tenn. 2003); *King*, 684 S.W.2d at 619. Accordingly, the proof of actual intent required to give rise to a common law cause of action goes beyond that sufficient to prove gross or even criminal negligence, and it will not suffice to merely allege the employer knowingly permitted the existence of a hazardous work condition, violated safety regulations, breached its duty to provide a safe work place, or ordered an employee to perform an extremely dangerous task. *See Gonzales,* 857 S.W.2d at 45; *Mize v. Conagra, Inc.*, 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987). In summary, the "actual intent" necessary to qualify for the exception to workers' compensation exclusivity equates to a deliberate determination on the part of the employer to cause injury combined with the undertaking of some means appropriate to that purpose.

In the instant case, Plaintiff alleges several claims against Defendant including the common law claims of intentional infliction of emotional distress, false imprisonment, and physical assault. However, the exclusivity doctrine bars such claims against an employer absent proof of an actual intent to injure. Here, Plaintiff offered no proof that Defendant intended to harm him. The allegations are aimed against employees of the Defendant, Davis and Watford. These individuals

are not the employer. Therefore, Plaintiff cannot sue his employer at common law for his injuries. *Blair*, 756 S.W.2d at 270. Thus, the common law claims alleged against Defendant fail for a lack of evidence showing that Defendant actually intended to injure Plaintiff, and the Court will **GRANT** summary judgment on Plaintiff's common law claims.

### C. Hostile Work Environment

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 and of the Tennessee Human Rights Act ("THRA") due to a hostile work environment. Defendant argues Plaintiff has not satisfied the elements of a prima facie case and it has established an affirmative defense. The Court concludes summary judgment is inappropriate on this claim.

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The THRA contains a similar prohibition, and is analyzed in the same manner. Tenn. Code Ann. §4-21-40; *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). A work environment is hostile when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

The parties dispute whether Davis qualifies as a supervisor or coworker. Nevertheless, it is clear Watford is a coworker of Plaintiff. An employer can be held liable for coworker harassment when the employee establishes a prima facie case:

> (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on

15

sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability.

*Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006). Here, Plaintiff has established a prima facie case of coworker harassment.

Defendant argues Plaintiff's harassment claim fails because the action against him did not result from him being a male. In *Oncale v. Sundowner Offshore Servs.*, the Supreme Court held sex discrimination consisting of same-sex haraassment is actionable under Title VII. 523 U.S. 75, 81 (1998). However, the mere existence of sexual content does not establish a Title VII claim. *Vickers*, 453 F.3d at 765 (citing *Oncale*, 523 U.S. at 80). Rather, the critical issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* In same-sex cases, there are three ways a plaintiff may establish a hostile work environment: "(1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; and (3) where the plaintiff offers 'direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" *Id.* (citing *Oncale*, 523 U.S. at 80-81).

In this case, the actions of Davis and Watford were only directed at Plaintiff. There is nothing in the record to show that their actions were ever directed at other employees of Dollar General, male or female. Davis and Watford allegedly made sexually explicit comments, touched Plaintiff's stomach, and pulled his pants down with the intent of seeing his genitals. They allegedly made comments about his butt and said he was "every gay person's dream." Plaintiff references several incidents that led him to believe that Davis and Watford were homosexual (Pl. Dep. 50 & 56). If the allegations are true, a jury could determine the harassers were making sexual advances

based on sexual desire, and thus would be based on Plaintiff's sex.

Furthermore, such conduct is sufficiently severe and pervasive enough to constitute a hostile work environment. When determining whether a work environment is hostile or abusive, courts review the totality of the circumstances. *Harris*, 510 U.S. at 23. Such factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The Court "evaluate[s] the conduct at issue by both an objective and subjective standard." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (citing *Harris*, 510 U.S. at 21-22). The objective and subjective evaluation "requires a plaintiff to establish both that the harassing behavior was 'severe or pervasive' enough to create an environment that a reasonable person would find objectively hostile or abusive, and that he or she subjectively regarded the environment as abusive." *Id.* (citing *Harris*, 510 U.S. at 21-22). Though words alone are not sufficient to find that a work environment is severe or pervasive, the court has found that "harassment involving an 'element of physical invasion' is more severe than harassing comments alone." *Id.* at 334 (quoting *Williams v. General Motors Co.*, 187 F.3d 553, 563 (6th Cir. 1999)). The acts against Plaintiff were physically invasive and unreasonably interfered with Plaintiff's ability to work. If Plaintiff's allegations are true, he was clearly subjected to a hostile work environment.

The fifth element of the prima facie case for coworker harassment requires that the employer knew or should have known of the harassment and failed to take immediate corrective action. *Clark v. UPS*, 400 F.3d 341, 348 (6th Cir. 2005); *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). The store manager in this case was aware of how Plaintiff was being treated by his coworker.

17

Plaintiff reported several incidents to Trent, who agreed to speak with the other employees about their actions. Subsequently, the harassment by Davis and Watford worsened. Trent inquired as to whether the harassment had stopped and Plaintiff expressed that it had not. However, the manager did not notify the ERC until some time after the major incident occurred in which Plaintiff was attacked by Davis and Watford. Thus, he did not take immediate action to address the harassment complaint. Accordingly, the case cannot be dismissed on summary judgment. *Williams*, 187 F.3d at 563 (finding that there was a question for the jury because a trier of fact could find that the plaintiff was subjected to a hostile work environment based on allegations of harassing comments and an incident of physical touching).

Defendant also asserts an affirmative defense set forth in *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Presumably, Defendant argued this defense in the event the Court concluded Davis was a supervisor. Because the Court did not need to decide that issue, and since Plaintiff's claim survives based on coworker harassment, the Court need not decide whether the affirmative defense would apply.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 49) and the motion to quash or dismiss will be **GRANTED** (Court File No. 60).

An Order shall enter.

/s/
**CURTIS L. COLLIER**

**CHIEF UNITED STATES DISTRICT JUDGE**